## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **NEW ENGLAND REINSURANCE** | : | **3:12cv948 (WWE)** |
| **CORPORATION,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FERGUSON ENTERPRISES, INC.** | : | |
| **(successor-in-interest to P.E. O'Hair** | : | |
| **& Company Inc.); AMERICAN** | : | |
| **INSURANCE COMPANY; AVIVA** | : | |
| **CANADA INC. (successor-in-interest** | : | |
| **to Commercial Union Assurance of** | : | |
| **Canada); CENTRAL NATIONAL** | : | |
| **INSURANCE COMPANY OF OMAHA;** | : | |
| **EMPLOYERS INSURANCE COMPANY** | : | |
| **OF WAUSAU; FIREMAN'S FUND** | : | |
| **INSURANCE COMPANY; GREAT** | : | |
| **AMERICAN INSURANCE COMPANY;** | : | |
| **CONTINENTAL INSURANCE** | : | |
| **COMPANY (successor-in-interest** | : | |
| **to Harbor Insurance Company);** | : | |
| **INSURANCE COMPANY OF THE** | : | |
| **STATE OF PENNSYLVANIA;** | : | |
| **NATIONAL AMERICAN INSURANCE** | : | |
| **COMPANY (successor-in-interest to** | : | |
| **American National Fire Insurance** | : | |
| **Company); NATIONAL UNION FIRE** | : | |
| **INSURANCE COMPANY OF** | : | |
| **PITTSBURGH, PA; PACIFIC** | : | |
| **INDEMNITY COMPANY; and ST. PAUL** | : | |
| **PROTECTIVE INSURANCE COMPANY** | : | |
| **(as successor-in-interest to** | : | |
| **Northbrook Property & Casualty** | : | |
| **Insurance Company),** | : | |
| **Defendants.** | : | |

## RULING ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

In this declaratory judgment action, plaintiff New England Reinsurance seeks a

declaration regarding the rights and obligations of the parties to this action pursuant to

certain liability insurance policies issued to P.E. O'Hair & Company and its successor United Westerburne Inc.  After an extensive settlement conference in June 2016, the parties have nearly settled this action.  However, defendants Ferguson Enterprises, Inc. (as successor-in-interest to P.E. O'Hair & Company, Inc. ("O'Hair" or "Insured")) and National Union Fire Insurance Company of Pittsburgh, PA, ("National Union") now seek summary judgment relative to a policy for excess general liability issued to O'Hair by National Union. Specifically, the parties seek a determination of the interpretation of a certain policy provision.  For the following reasons, the Court will find in favor of Ferguson's motion for summary judgment.[1]

## Background

According to the parties' submissions, the following facts are not in dispute.

O'Hair was a California-based corporation that sold or distributed plumbing supply products that contained asbestos.[2]  O'Hair and its successors were named as defendants in numerous asbestos-related lawsuits that were filed largely in California.

In 1978, O'Hair paid premiums to National Union to purchase excess general liability insurance to protect against catastrophic liabilities in the event that the defense and settlement of such liabilities exhaust the underlying primary and umbrella policies.

Due to Ferguson's asbestos liabilities, two policies underlying the National Union policy are now asserted to be exhausted by defense and indemnity payments.[3]

---

[1]The parties' trial briefs are construed as cross motions for summary judgment.

[2]California is both O'Hair's place of business and incorporation.

[3]This ruling assumes exhaustion.  National Union states that it has not received proof of exhaustion.

The National Union excess liability policy incorporates the terms and conditions of the underlying policies.  Pursuant to the relevant insurance terms, National Union agreed, "subject to the limitations, terms and conditions herein mentioned, to indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability (a) imposed upon the Insured by law ...for damages on account of (i) Personal injuries ... caused by or arising out of each occurrence happening anywhere in the world during the policy period."  The policy provides coverage for up to $5 million for "Ultimate Net Loss," defined as the "total sum which the Insured, or his Underlying Insurers as scheduled, or both, become obligated to pay by reason of personal injuries ... and shall also include ... expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as consequence of any occurrence cover hereunder..." Additionally, the policy states that National Union "shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance."[4]

A clause entitled "PRIOR INSURANCE AND NON CUMULATION OF LIABILITY" ("The Clause") states:

> It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Insured prior to the inception date hereof the limit of liability hereon ... shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance.

According to National Union, two excess insurance policies were issued by Federal Insurance Company and the Insurance Company of the State of Pennsylvania

---

[4]The parties refer to this provision as the "other insurance" provision.

("ICSOP") prior to the inception date of the National Union policy.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

In a prior ruling on a motion for partial summary judgment, this Court determined that California state law applied to the interpretation of the insurance policies at issue. Under the California rule of "horizontal exhaustion," all primary insurance must be

4

exhausted before an excess insurer must drop down to provide coverage.  North American Capacity Ins. Co. v. Claremont Liability Ins. Co., 177 Cal. App. 4th 272, 293 (2009).   Here, National Union maintains that The Clause reduces its excess insurance policy limits by the amount of any payments made by it, Federal or ICSOP on account of Ferguson's losses.  Ferguson argues that:  (1) National Union's interpretation of The Clause would allow National Union to escape its indemnity obligation; (2) The Clause should be strictly construed as an exclusion; (3) The Clause applies to circumstances involving single rather than multiple occurrences; (4) The Clause is ambiguous and may be construed as encompassing only prior issued National Union policies.

Insurance contracts are subject to the ordinary rules of contractual interpretation, and the Court must discern the intent of the parties from the written provisions of the insurance policy.  Palmer v. Truck Ins. Exchange, 988 P.2d 568, 572-573 (Cal. 1999). "Contracts are to be interpreted so as to give effect to the mutual intention of the parties at the time of contracting, to the extent the mutual intent is ascertainable and lawful." E.M.M.I Inc. v. Zurich American Insurance Company, 32 Cal. 4th 465, 370 (2004).  In construing insurance contracts, the entire contract as a whole is construed together for the purpose of giving effect to each clause.  La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co., 9 Cal. 4th 27, 37 (1994).

The Court should interpret the language of the policy according to its plain meaning, and the Court should not "strain to create an ambiguity where none exists." Waller v. Truck Ins. Exchange, Inc., 900 P.2d 619, 67 (Cal. 1995).  An insurance policy

provision is ambiguous when it is capable of two or more constructions, both of which are reasonable.  Bay Cities Paving & Grading, Inc. v. Lawyer's Mut. Ins. Co., 5 Cal. 4th 854, 867 (1993).

California law applies the "general principle that doubts as to meaning must be resolved against the insurer and that any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." Saarman Construction, Ltd. v. Ironshore Specialty Insurance Company, 2016 WL 4411814 at *5 (N.D. Ca. August 19, 2016); See also AIU Insurance Company, 51 Cal. 3d 807, 831 (1990).  Thus, ambiguities are generally construed against the insurer in order to protect the insured's reasonable expectation of coverage.  La Jolla Beach & Tennis Club, Inc., 9 Cal. 4th at 37.

Exclusions and limitations to coverage in insurance policies are "strictly construed against the insurer and liberally interpreted in favor of the insured."  Delgado v. Heritage Life Insurance Company, 157 Cal. App. 3d 262, 271 (1984).  Provisions referred to as "Other Insurance" clauses are generally meant to prevent multiple recoveries by an insured where overlapping insurance policies provide coverage for the same loss.  Travelers Casualty and Surety Company v. Century Surety Company, 118 Cal. App. 4th 1156, 1161 (2004).  However, under California law, an insurance clause, which works to erode a certain policy's limits due to the existence of other insurance coverage, is discouraged and generally not given effect.  See Certain Underwriters at Lloyds, London v. Arch Specialty Ins. Co., 246 Cal. App. 4th 418, 433 (2016).

Ferguson characterizes The Clause as an exclusion; however, National Union points out that the policy contains a header that specifies that "THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSIONS."  The Clause is not listed thereunder. Further, The Clause does not work to exclude certain claims from coverage but specifies the limits of liability applicable to covered claims.  Accordingly, the Court will not construe The Clause as an exclusion.

National Union maintains that, according to its plain language, The Clause reduces National Union's policy limits by amounts due or paid under the prior-issued excess insurance policies.  According to National Union, due to the nature of asbestos claims as "high-frequency, relatively low-value claims" and the number of insurers involved, The Clause will erode the policy limits slowly, "making the chances of an escape virtually nil."

Ferguson counters that The Clause is not even relevant because it applies only in the context of damages for a single occurrence.  Mass torts asbestos exposure is not considered to be a single occurrence as a matter of California law.  See London Market Insurers v. Superior Court, 146 Cal. App. 4th 648, 665-672 (2007).  However, The Clause refers broadly to "any loss covered hereunder."  The policy language does not otherwise limit the term "any loss" to signify that The Clause applies only to single or individual occurrences; by constrast, the policy provides for a specific definition with regard to "net loss."  Thus, review of the policy as a whole demonstrates that the term "loss" as used in The Clause should be afforded a broad meaning and is not applicable

7

only upon a single occurrence.  See California Ins. Co. v. Stimson Lumber Co., 2004 WL 1173185 at *11 (D. Or. May 2006) (rejecting a similar argument relevant to nearly identical language from a National Union policy with non-cumulation clause).[5]

Ferguson asserts further that the phrase "any other excess policy issued to the Insured prior to the inception" of National Union's excess liability policy is ambiguous; Ferguson posits that the phrase may be interpreted as other policies issued by National Union prior to the instant policy's inception date.  National Union counters that the language "any other excess liability policy" unambiguously means policies including those issued by insurers other than National Union.  In a consideration of analogous excess liability policy language relevant to asbestos exposure, another district court found that construing the phrase "any other excess" policy to "encompass excess policies issued by other insurers" would create an escape clause by effectively eliminating the insurer's coverage obligations.  Air & Liquid Systems Corporation v. Allianz Underwriters Ins. Co., 2013 WL 5436934 at *28 (W.D. Pa. Sept. 27, 2013).

The phrase "any other policies" is susceptible to more than one reasonable interpretation: It may be reasonably interpreted to encompass either (1) previously issued by insurers including National Union, or (2) only policies previously issued by National Union.  National Union has not demonstrated that the policy defined or otherwise specified that the "other excess liability policies" included policies issued by

_____

[5]The Court notes that Ferguson relies upon case law involving a clause specific to a single or "same occurrence."  See Spaulding Composites Co. v. Aetna Casualty & Surety Co., 819 A.2d 410, 412 (N.J. 2003). However, the instant clause refers to "any loss."

other insurers.  Reading the phrase within the context of the policy as a whole, National

Union's interpretation would render hollow the "other insurance" provision, which

ensures, without an erosion of policy limits, against an insured's multiple recovery for

the same expenses.  If National Union's liability limit were eroded by other insurer's

coverage, the policy would not need to provide the "other insurance" provision to

safeguard against National Union's indemnification of a loss already covered by another

insurer.

Without explicit language as required by California law, the policy fails to indicate

a mutual intent of the parties to provide for erosion of the liability limits in the manner

advanced by National Union.  Further, the Court is not persuaded that National Union

has "virtually nil" chance to escape its indemnity obligation if its liability limit is eroded by

coverage provided by prior non-National Union-issued excess policies.

The Court is mindful that California precedent disfavors enforcement of policy

terms that would leave an insured "stranded" without coverage.  Certain Underwriters at

Lloyds, 246 Cal. App. 4th 418, 436 (2016).  Thus, construing any ambiguities in favor of

the insured's reasonable expectation of coverage, the Court agrees with and adopts the

analysis articulated by Air & Liquid Systems Corporation.  The Clause is enforceable as

ensuring coverage if the phrase "any other excess policy" is construed to include only

other prior excess policies issued by the same insurer, or as in this case, National

Union.  Id.  The Court will grant Ferguson's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Ferguson's motion for

summary judgment and DENIES National Union's motion for summary judgment.  The

9

Court finds that THE CLAUSE provides for erosion of the limits of liability to the extent that "any other excess policy" is construed to include only other prior excess policies issued by National Union.


/s/Warren W. Eginton
Warren W. Eginton
Senior U.S. District Judge


Dated this 26th day of September, 2016 at Bridgeport, Connecticut.